## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CHARLES TASHJIAN, on behalf of himself and all others similarly situated,<br>　　　　　　　　　　Plaintiff,<br><br>　　v.<br><br>CVS PHARMACY, INC.; CVS HEALTH CORPORATION; AND CVS CAREMARK, INC.<br>　　　　　　　　　　Defendants. | **CIVIL ACTION**<br>**NO. 19-11164-TSH** |

## REPORT AND RECOMMENDATION

### March 13, 2020

Hennessy, M.J.

This matter comes before the Court on Defendants CVS Pharmacy, Inc. ("CVS Pharmacy"), CVS Health Corporation ("CVS Health"), and CVS Caremark, Inc.'s (collectively "Defendants") motion to dismiss. (Docket #16). Plaintiff Charles Tashjian has filed an opposition to the motion. (Docket #22) to which Defendants have replied (Docket #25). This matter is now ripe for adjudication. For the reasons that follow, I recommend that the motion to dismiss (Docket #16) be ALLOWED as to Defendants CVS Health and CVS Caremark, Inc. and as to counts I, II, III, IV, and VI and DENIED as to count V.

## I.    BACKGROUND

Tashjian utilized CVS Pharmacy Store #1852 in Medway, Massachusetts to fill his prescriptions. (FAC ¶ 20)[1]. In June 2018, CVS Pharmacy sent a letter entitled "Request to Close Potential Gap in Therapy" to Tashjian's medical provider, Dr. Fouad Aoude, stating that a CVS

---

[1] The First Amended Complaint ("FAC") is available at Docket #14-1 pages 26-44.

Pharmacy employee had spoken to Tashjian about diabetes care. (FAC ¶ 21, Docket #14-1 at 45). The letter also stated that Tashjian wanted CVS Pharmacy to reach out on his behalf to Dr. Aoude to determine if it was appropriate for Tashjian to start a statin therapy. (FAC ¶ 24). This letter was added to Tashjian's medical file. (FAC ¶ 31).

In November of 2018, CVS Pharmacy again sent a Gap in Therapy letter to Dr. Aoude stating that a CVS Pharmacy employee had spoken with Tashjian about diabetes care and that Tashjian wanted CVS Pharmacy to reach out to Dr. Aoude to determine if it was appropriate for Tashjian to start a statin therapy. (FAC ¶¶ 35-36, 38, Docket #14-1 at 46). This letter was also added to Tashjian's medical file.

Tashjian does not have diabetes and never consulted with any CVS Pharmacy employee about diabetes care nor did he ever request that CVS Pharmacy send a letter to his physician concerning statin therapy. (FAC ¶¶ 26-28).

On February 27, 2019, Tashjian filed a complaint on behalf of himself and all others similarly situated against the Defendants in the Superior Court of Suffolk County. (Docket #14-1 at 4). He filed an amended complaint on April 26, 2019 in which he asserts claims of negligence, breaches of confidentiality, appropriation of Tashjian's name and likeness, tortious misappropriation of private and personal information, unfair trade practices, and declaratory judgment. (FAC ¶¶ 77-179). On May 23, 2019, Defendants removed the case to this court on the basis of 28 U.S.C. § 1332(d). (Docket #1).

II.    ANALYSIS

CVS Health and CVS Caremark, Inc. seek to dismiss the claims against them pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction. The Defendants also seek to dismiss the

case in its entirety pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

A.      Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(2)

"To hear a case, a court must have personal jurisdiction over the parties, 'that is, the power to require the parties to obey its decrees.'" Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 50 (1st Cir. 2002) (quoting United States v. Swiss Am. Bank, Ltd., 191 F.3d 30, 35 (1st Cir. 1999)). The plaintiff bears the burden of establishing that the court has personal jurisdiction over the defendants. Id. In assessing whether the plaintiff has met this burden, the court may employ one of three standards: the "prima facie" standard; the "preponderance-of-the-evidence" standard; or the "likelihood" standard. Boston Post Partners II, LLP v. Paskett, No. 15-13804-FDS, 2016 U.S. Dist. LEXIS 88811, at *13 (D. Mass. July 8, 2016). "Where, as here, the court is called to make this assessment without first holding an evidentiary hearing, the prima facie standard is applied." Id. (citing United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 618 (1st Cir. 2001)).

Under the prima facie standard, "the inquiry is whether [the plaintiff] has provided evidence which, if credited, is sufficient to support findings of all facts essential to personal jurisdiction." A Corp. v. All Am. Plumbing, Inc., 812 F.3d 54, 58 (1st Cir. 2016) (quoting Phillips v. Prairie Eye Ctr., 530 F.3d 22, 26 (1st Cir. 2008)). A plaintiff may not "rely on unsupported allegations in its pleadings[,]" but "[r]ather [the plaintiff] must put forward 'evidence of specific facts' to demonstrate that jurisdiction exists." Id. (quoting Platten v. HG Bermuda Exempted Ltd., 437 F.3d 118, 134 (1st Cir. 2006)). Facts offered by the defendant "become part of the mix only to the extent that they are uncontradicted." Astro-Med, Inc. v. Nihon Kohden Am., Inc., 591 F.3d 1, 8 (1st Cir. 2009) (quoting Adelson v. Hananel, 510 F.3d 43, 48 (1st Cir. 2007)).

1.      CVS Caremark, Inc.

Defendants argue that CVS Caremark, Inc. is not a corporate entity and therefore the claims against it are subject to dismissal pursuant to Fed. R. Civ. P. 12(b)(2).  (Docket #17 at 5).  In his opposition to the motion, Tashjian characterizes the Defendants' argument as stating that dismissal is appropriate under Fed. R. Civ. P. 12(b)(2) because "CVS Caremark, Inc. is no longer a corporate entity at all because effective September 3, 2014, Caremark Corporation's name was changed to CVS Health Corporation."  (Docket #22 at 5) (quotation and alteration omitted).  However, Tashjian misconstrues Defendants' argument.

The declaration of Thomas S. Moffatt, the Vice President, Assistant Secretary, and Assistant General Counsel of CVS Health, reveals that CVS Health was formerly known as "CVS Caremark <u>Corporation</u>" until September 3, 2014.  (Docket #17-1 at ¶ 8) (emphasis added).  However, "CVS Caremark, <u>Inc.</u>" is not a valid corporate entity and is not an entity incorporated in any state.  (<u>Id.</u> at ¶ 8) (emphasis added).  Tashjian has provided no evidence to dispute this statement.  As this court does not have jurisdiction over non-existent entities, I recommend that the court dismiss the claims against CVS Caremark, Inc.  <u>See</u> <u>Ladonicolas v. Beury</u>, No. 92-16555, 1994 U.S. App. LEXIS 6950, at *6 (9th Cir. Apr. 1, 1994); <u>James v. Univ. of N.C. Health Care Hosp.</u>, No. 1:18CV339, 2018 U.S. Dist. LEXIS 161627, at *9 (M.D.N.C. Sept. 20, 2018) ("(Failure to name the proper party in the complaint constitutes grounds for dismissal [pursuant to Fed. R. Civ. P. 12(b)(2)]").

2.      CVS Health Corporation

There are two types of personal jurisdiction:  general and specific.  <u>Ace Am. Ins. Co. v. Oyster Harbors Marine, Inc.</u>, 310 F. Supp. 3d 295, 303 (D. Mass. 2018) (citing <u>United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp.</u>, 960 F.2d 1080, 1088 (1st Cir. 1992)).  General

jurisdiction allows a court to assert jurisdiction over corporations "to hear any and all claims against them." Daimler AG v. Bauman, 571 U.S. 117, 122 (2014) (quoting Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011)). General jurisdiction is not directly founded on the defendant's forum-based contact, but exists where the defendant, either as a domiciliary of the forum or due to some significant and continuous activity within the forum state, is considered "at home" in the forum state. Daimler AG v. Bauman, 571 U.S. 117, 137 (2014). "Specific jurisdiction, on the other hand, depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." Goodyear, 564 U.S. at 919 (internal quotation and alteration omitted).

Defendants have provided evidence that CVS Health is a Delaware corporation with a principal place of business in Rhode Island. (Docket #17-1 at ¶ 2). Furthermore, CVS Health has no office or place of business in Massachusetts nor does it own or lease real property in Massachusetts. (Id. at ¶ 7). CVS Health is a holding company and its primary functions are to hold the equity interests of its subsidiaries, to issue equity and debt securities to the public, and to file reports with the U.S. Securities and Exchange Commission consistent with those required of public companies. (Id. at ¶ 3). It does not offer pharmaceutical products or services to the public. (Id.). CVS Health is not licensed or registered to do any business in Massachusetts and does not have any agent or employees in Massachusetts. (Id. at ¶ 5). Tashjian asserts that, through its absorption of CVS Caremark, CVS Health has continuous and systematic activity in Massachusetts through its mail-order pharmacies. (Docket #22 at 5). Tashjian points to a chart available at cvshealth.com which lists under "Rx Benefits Management": "Innovative CVS Caremark ® plan designs help minimize client costs while improving health outcomes for 75 million plan members.

We operate five mail order pharmacies and offer broad capabilities that include formulary management and clinical services." (Docket #22-1). Tashjian also cites the Gap in Therapy letters sent by CVS Pharmacy to his physician which indicate that a recipient may opt out of receiving future communications by sending an email to "do_not_call@cvscaremark.com." (Docket #14 at 45-46).

Turning first to general jurisdiction, the undersigned must evaluate whether Tashjian has made a prima facie showing that, based on CVS Health's contacts with Massachusetts, CVS Health is "essentially at home" in this forum. Daimler, 571 U.S. at 138-39. "The 'paradigm' forums in which a corporate defendant is 'at home' [] are the corporation's place of incorporation and its principal place of business." BNSF Ry. v. Tyrrell, 137 S. Ct. 1549, 1558 (2017). However, "[t]he exercise of general jurisdiction is not limited to these forums; in an 'exceptional case,' a corporate defendant's operations in another forum 'may be so substantial and of such a nature as to render the corporation at home in that State.'" Id. (quoting Daimler, 571 U.S. at 139 n. 19).

The paradigmatic bases for general jurisdiction do not apply here, as Tashjian correctly alleges that CVS Health is a Delaware corporation and is headquartered in Rhode Island. (FAC ¶ 14). Nor does Tashjian explicitly contend that the exceptional case standard applies. Instead Tashjian cites to cases decided prior to the Supreme Court's decision in Daimler AG v. Bauman in which courts applied the less stringent "continuous and systematic activity, unrelated to the suit" standard. (Docket #22 at 4). In Daimler, the Supreme Court held that this standard was "unacceptably grasping," Daimler, 571 at 137-38, and rejected the plaintiffs' arguments that a foreign manufacturer was at home in California due to its "multiple offices, continuous operations, and billions of dollars' worth of sales" in the forum, id. at 142 (Sotomayor, J., concurring). Similarly, Tashjian's assertions that CVS Health operates mail-order pharmacies that conduct

6

business in the Commonwealth and that the Gap in Therapy letters sent to his physician indicate that a recipient may opt out of receiving future communications by sending an email to do_not_call@cvscaremark.com do not rise to the level of contacts that would put CVS Health "essentially at home" in Massachusetts.  See Corcoran v. CVS Health Corp., 169 F. Supp. 3d 970, 980 (N.D. Cal. 2016) (plaintiff's comparative analysis "not persuasive").   Therefore, the undersigned finds that general jurisdiction over CVS Health does not lie in Massachusetts.

Having found that this court lacks general jurisdiction over CVS Health, the undersigned must now consider whether this court has specific jurisdiction over CVS Health.  To establish specific jurisdiction, a plaintiff must show that 'the cause of action arises directly out of, or relates to, the defendant's forum-based contacts.'"  Ace, 301 F. Supp. at 303 (quoting Pritzker v. Yari, 42 F.3d 53, 60 (1st Cir. 1994)).  Specific jurisdiction over a non-resident must comport with the requirements of the Massachusetts long-arm statute and the Fourteenth Amendment's Due Process Clause.  See Moura v. New Prime, Inc., 337 F. Supp. 87, 92–93 (D. Mass. 2018) (citing World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 290 (1980)).  "In determining whether a non-resident defendant is subject to its jurisdiction, a federal court exercising diversity jurisdiction is the functional equivalent of a state court sitting in the forum state."  Moura, 337 F. Supp. 3d at 92 (quoting Sawtelle v. Farrell, 70 F.3d 1381, 1387 (1st Cir. 1995)).

Consistent with the duty to avoid unnecessary decisions of serious constitutional issues, "courts should consider the long-arm statute first, before approaching the constitutional question."  SCVNGR, Inc. v. Punchh, Inc., 478 Mass. 324, 330 (2017).  The Massachusetts long-arm statute enumerates eight specific grounds on which a nonresident defendant may be subjected to personal jurisdiction by a court of the Commonwealth.  See Mass. Gen. Laws ch. 223A, § 3.  Massachusetts courts have held that the long-arm statute "asserts jurisdiction over the person to the constitutional

limit only when some basis for jurisdiction enumerated in the statute has been established." Good Hope Indus., Inc. v. Ryder Scott Co., 378 Mass. 1, 6 (1979). Therefore, this court is "required to decline to exercise jurisdiction if the plaintiff [is] unable to satisfy at least one of the statutory prerequisites." Id.

Tashjian alleges that CVS Health's activity satisfies the long-arm statute because his claims arise out of CVS Health's regular transaction of business throughout the Commonwealth. (FAC ¶ 16). Section 3(a) authorizes the exercise of personal jurisdiction over a corporation as to a cause of action arising from the corporation's "transacting any business in this commonwealth." Mass. Gen. Laws ch. 223A, § 3(a). To satisfy this provision, a plaintiff must allege facts sufficient to demonstrate that the defendant transacted business in Massachusetts, and that the plaintiff's claims arose from such transactions. Tatro v. Manor Care, Inc., 416 Mass. 763, 767 (1994). Courts have construed this clause broadly; "generally, the purposeful and successful solicitation of business from the residents of the Commonwealth, by a defendant or its agent, will suffice to satisfy this requirement." Id.

Defendants correctly argue that Tashjian's amended complaint is devoid of any allegations of CVS Health's relation to the underlying controversy in this case, namely the sending of the Gap in Therapy letters. (Docket # 17 at 6). In his amended complaint, Tashjian alleges that CVS Pharmacy sent the Gap in Therapy letters to his physician. (FAC ¶¶ 21, 35). Tashjian has neither pled nor argued that CVS Pharmacy's contacts are sufficient to pierce the corporate veil and impute personal jurisdiction over CVS Pharmacy to CVS Health. Nor does the domain name "cvscaremark.com" in the opt-out email address, standing on its own, satisfy section 3(a) of the long-arm statute. Tashjian has failed to meet his burden of putting forward evidence of specific facts to demonstrate that jurisdiction exists. In contrast, Moffatt's declaration makes clear that

CVS Health does not offer pharmaceutical products or services to the public. (Docket #17-1 at ¶ 3). Therefore, I recommend that the court dismiss the claims against CVS Health.

B.       Motion to Dismiss Under Federal Rule of Civil Procedure 12(b)(6)

On a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court "must assume the truth of all well-plead[ed] facts and give the plaintiff the benefit of all reasonable inferences therefrom." Ruiz v. Bally Total Fitness Holding Corp., 496 F.3d 1, 5 (1st Cir. 2007). "Under Rule 12(b)(6), the district court may properly consider only facts and documents that are part of or incorporated into the complaint; if matters outside the pleadings are considered, the motion must be decided under the more stringent standards applicable to a Rule 56 motion for summary judgment." Rivera v. Centro Medico de Turabo, Inc., 575 F.3d 10, 15 (1st Cir. 2009) (quoting Trans-Spec Truck Serv., Inc. v. Caterpillar, Inc., 524 F.3d 315, 321 (1st Cir. 2008)). There lies an exception to this rule "for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint." Id. (quoting Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001)).

To survive a motion to dismiss, a plaintiff must "state a claim that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 555 (internal citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 556). Despite this generous standard, "Rule 12(b)(6) is not entirely a toothless tiger . . . [t]he threshold for stating a claim may be low, but it is real."

Dartmouth Rev. v. Dartmouth Coll., 889 F.2d 13, 16 (1st Cir. 1989) (quotation omitted).  The complaint must therefore "set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory."  Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988); see DM Research, Inc. v. Coll. Of Am. Pathologists, 170 F.3d 53, 55 (1st Cir. 1999) (explaining that the complaint must "allege a factual predicate concrete enough to warrant further proceedings").

Although the complaint need not provide "detailed factual allegations," Twombly, 550 U.S. at 555, it must "amplify a claim with some factual allegations . . . to render the claim plausible," Iqbal v. Hasty, 490 F.3d 143, 157–58 (2d Cir. 2007).  Thus, the complaint must provide "the grounds upon which [the plaintiff's] claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'"  ATSI Commc'ns v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (quoting Twombly, 550 U.S. at 555).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).  Dismissal is appropriate if a plaintiff's well-pleaded facts do not "possess enough heft to show that [the] plaintiff is entitled to relief."  Ruiz Rivera v. Pfizer Pharms., LLC, 521 F.3d 76, 84 (1st Cir. 2008) (quotations and original alterations omitted).

Though most motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) are "premised on a plaintiff's putative failure to state an actionable claim, such a motion may sometimes be premised on the inevitable success of an affirmative defense."  Nisselson v. Lernout, 469 F.3d 143, 150 (1st Cir. 2006).  "As a general rule, a properly raised affirmative defense can be adjudicated on a motion to dismiss so long as (i) the facts establishing the defenses are definitely ascertainable from the complaint and the other allowable sources of information, and (ii) those

facts suffice to establish the affirmative defense with certitude." Rodi v. S. New Eng. Sch. of Law, 389 F.3d 5, 12 (1st Cir. 2004).

       1.     Negligence

"To state a claim of negligence under Massachusetts law, a plaintiff must allege:  (1) a legal duty owed by defendant to plaintiff; (2) a breach of that duty; (3) proximate or legal cause; and (4) actual damage or injury."  Mackenzie v. Flagstar Bank, FSB, 738 F.3d 486, 495 (1st Cir. 2013) (quotation omitted).  Tashjian asserts that, as a result of Defendants' actions, Defendants have received financial benefit and profit, and he has suffered an increased risk of medical risk and medical mistakes.  (FAC ¶¶ 90, 112).

Tashjian argues that he is entitled to a disgorgement of the profits Defendants have received as a result of their improper actions.  (FAC ¶ 112; Docket #22 at 8).  However, "[a] negligence action may not be maintained unless one has suffered injury or damage."  Donovan v. Philip Morris USA, Inc., 455 Mass. 215, 222 (2009) (quoting Cannon v. Sears, Roebuck & Co., 374 Mass. 739, 742 (1978)).  In Massachusetts, "injury and damages are integrally related:  there can be no invasion of the rights of another unless legal damage is caused, and for that reason nominal damages cannot be recovered."  Id.  Thus, in order to proceed on his negligence claim, Tashjian must allege that he suffered actual injury or damage.  Tashjian has failed to do so.

The Gap in Therapy letters CVS Pharmacy sent to Tashjian's physician merely state that CVS Pharmacy had spoken to Tashjian about diabetes care and that Tashjian had asked CVS Pharmacy to reach out on his behalf to determine if it would be appropriate to start a statin therapy. (Docket #14 at 45, 46).   It then requests the physician to send a prescription for statin therapy if appropriate.  (Id.).  The Gap in Therapy letter makes no independent assertion that a statin therapy would be appropriate for that patient.  (See id.).

"As a general matter, a plaintiff is "entitled to compensation for all damages that reasonably are to be expected to follow, but not to those that possibly may follow, the injury he has suffered." Donovan, 455 Mass. at 223.  While the Gap in Therapy letter may cause a physician to consider the efficacy of a statin therapy for his patient, the physician has an independent duty to consider the history and needs of his patient and the effects of the therapy before making such a prescription. See Cottam v. CVS Pharm., 436 Mass. 316, 321 (2002); see also Coyle v. Richardson-Merrell, Inc., 526 Pa. 208, (1991), quoted in Fecho v. Eli Lilly & Co., 914 F. Supp. 2d 130, 145 (D. Mass. 2012) ("It is the duty of the prescribing physician to be fully aware of (1) the characteristics of the drug he is prescribing, (2) the amount of the drug which can be safely administered, and (3) the different medications the patient is taking.  It is also the duty of the physician to advise the patient of any dangers or side effects associated with the use of the drug as well as how and when to take the drug.  The warnings which must accompany such drugs are directed to the physician rather than to the patient-consumer as it is for the prescribing physician to use his independent medical judgment, taking into account the data supplied to him by the manufacturer, other medical literature, and any other source available to him, and weighing that knowledge against the personal medical history of his patient, whether to prescribe a given drug.").

In light of the physician's independent duties to Tashjian and the nature of the representations in the letter, Tashjian has failed to allege any damages which would reasonably be expected to follow Defendants' conduct.  I therefore recommend that the court dismiss count I of the amended complaint.

2.     Breach of Fiduciary Duty of Confidentiality

Tashjian asserts that Defendants violated their fiduciary duties to him when they sent false information to his physician and failed to disclose to his physician that the Defendants were receiving financial support for sending the Gap in Therapy letters.  (FAC ¶¶ 91-97).

To prevail on a claim for a breach of fiduciary duty, a plaintiff must demonstrate:  (1) the existence of a fiduciary duty; (2) breach of that duty; (3) damages; and (4) a causal connection between the breach of the duty and the damages."  Baker v. Wilmer Cutler Pickering Hale & Dorr LLP, 91 Mass. App. Ct. 835, 842 (2017).

In Alberts v. Devine, the Massachusetts Supreme Judicial Court held that "unless faced with a serious danger to the patient or to others, a physician owes a patient a duty not to disclose without the patient's consent medical information about the patient gained in the course of the professional relationship."  Alberts v. Devine, 395 Mass. 59, 60 (1985).  Lower Massachusetts courts have extended this fiduciary duty of confidentiality to pharmacists, relying in part on the Board of Registration in Pharmacy's regulations, specifically 247 Code Mass. Regs. 9.01(19).  Kelley v. CVS Pharm., Inc., No. 98-0897-BLS2, 2007 Mass. Super. LEXIS 381, at *13 (Mass. Super. Ct. Aug. 22, 2007); Weld v. CVS Pharm., No. 98-0897F, 1999 Mass. Super. LEXIS 261, at *17-18 (Mass. Super. Ct. June 1, 1999).  That regulation provides:

> A pharmacist shall maintain patient confidentiality at all times.  Confidential information shall include information maintained by the pharmacist in the patient's records or information which is communicated to the patient as part of patient counseling, which is privileged and may be released only to the patient or to those practitioners and pharmacists where, in the pharmacist's professional judgment, such release is necessary to protect the patient's health and well being; and to such other persons or governmental agencies authorized by law to receive such confidential information.

247 Code Mass. Regs. 9.01(19).

Pointing to the Board of Registration in Pharmacy's Regulations, Defendants argue that that Tashjian has failed to allege a breach of the fiduciary duty of confidentiality. (Docket #17 at 10). Defendants assert that they released the relevant information to Tashjian's physician while acting within their professional judgment to protect his health and well being and, therefore, their conduct is not actionable. (Id.). Tashjian responds that, while Defendants may have been permitted to relay information about Tashjian's prescriptions and treatment information to his physician, they were not permitted to make false statements in those communications. (Docket #22 at 13). However, Tashjian fails to point to any support for his contention that the fiduciary duty of confidentiality includes a duty to impart only accurate information. Indeed, under the Health Insurance Portability and Accountability Act ("HIPAA"), "[p]erfect records are not required." 65 Fed. Reg. 82,462 (Dec. 28, 2000). Thus, I recommend that the court dismiss count II of the amended complaint.

3.    Appropriation

Tashjian asserts a claim under Mass. Gen. Laws ch. 214, § 3A, which provides, in relevant part:

> Any person whose name, portrait or picture is used within the commonwealth for advertising purposes or for the purposes of trade without his written consent may bring a civil action in the superior court against the person so using his name, portrait or picture, to prevent and restrain the use thereof; and may recover damages for any injuries sustained by reason of such use.

The interest Section 3A is intended to protect "is the interest in not having the commercial value of one's name, portrait or picture appropriated to the benefit of another." Tropeano v. Atl. Monthly Co., 379 Mass. 745, 749 (1980). "The value of one's name, portrait or picture is not appropriated 'when it is published for purposes other than taking advantage of his reputation, prestige, or other value associated with him, for purposes of publicity.'" Id. (quoting Restatement (Second) of Torts

14

§ 652C, Comment d (1977)).  Here, there is no evidence that Defendants sought to take advantage of Tashjian's "reputation, prestige, or other value associated with him, for purposes of publicity," when it sent the Gap in Therapy letters to his physician.  "If [Tashjian] were famous and [Defendants] used the fact that he was a customer in its advertising without paying him for the use of his name, then he would have a cause of action under this statute."  Kelley, 2007 Mass. Super. LEXIS 381, at *18.  Having failed to make any such allegations, I recommend that the court grant Defendants' motion to dismiss with respect to count III of the amended complaint.

       4.      Tortious Misappropriation of Private and Personal Information

In count IV of his amended complaint, Tashjian asserts that Defendants misappropriated his personal and confidential information for commercial purposes.  (FAC ¶¶ 125-130).  "Massachusetts has not expressly recognized a separate cause of action for tortious misappropriation of private information."  Weld, 1999 Mass. Super. LEXIS 261, at *21.  Courts that have considered claims styled in this manner have found that the claim is either subsumed by Mass. Gen. Laws ch. 214, § 3A or by the right to privacy statute, Mass. Gen. Laws ch. 214, § 1B.  See Kelley, 2007 Mass. Super. LEXIS 381, at *17; Weld, 1999 Mass. Super. LEXIS 261, at *21.

To the extent that Tashjian asserts this claim pursuant to Mass. Gen. Laws ch. 214, § 1B, that statute provides that "[a] person shall have a right against unreasonable, substantial or serious interference with his privacy."  "To sustain a claim for invasion of privacy, the invasion must be both unreasonable and substantial or serious."  Nelson v. Salem State Coll., 446 Mass. 525, 536 (2006).

In Kelley v. CVS Pharmacy, Inc., the court analyzed a similar factual scenario.  In Kelley, the plaintiff filed various claims, including a claim for violation of his right to privacy, after he received an unsolicited letter from his pharmacy.  Kelley, 2007 Mass. Super. LEXIS 381, at *2.

The defendant pharmacy had agreed to mail certain letters, approved by a drug company, to pharmacy customers who had been prescribed certain medications. Id. at *1. The letters warned of the dangers of high cholesterol and informed customers about the benefits of cholesterol-lowering drugs. Id. at *2-4. The plaintiff had filled a diabetes-related prescription at the pharmacy, received an unsolicited letter, and filed claims against the pharmacy, the drug company, and the company that handled the mailings for the pharmacy claiming that his right to privacy had been violated and that the pharmacy had engaged in an unfair and deceptive act by sending the letters. Id. On cross-motions for summary judgment, the court determined that the plaintiff could not succeed on proving substantial or serious interference with his privacy. Id. at *5. The court found that the only private information about the plaintiff that someone could reasonably infer from the letter that the defendant pharmacy had provided was that he was to receive a letter that appeared to be targeted to pharmacy customers who had or were at risk of high cholesterol, and to those who had a history of heart disease or may be at risk of it, perhaps because they had diabetes. Id. at *6-7. The court noted that even this "meager information" was not disseminated beyond the companies that handled the mailings due to confidentiality agreements those companies had entered. Id. at *7. The court found that the "limited dissemination of this information falls well below the threshold of a substantial or serious interference with privacy." Id.

As in Kelley, the information that one could reasonably infer from reading the letters at issue in the instant case is "meager," namely that Tashjian had spoken to someone at CVS Pharmacy about diabetes care and therefore may have diabetes and had not filled a statin therapy in the past 180 days. (See Docket #14 at 45-46). The letters were sent to Tashjian's medical provider, who is under an independent duty not to disclose, without his patient's consent, medical information about the patient. See Alberts v. Devine, 395 Mass. 59, 60 (1985). Consistent with

16

the court's reasoning in <u>Kelley</u>, I find that the limited dissemination of the meager information contained in the Gap in Therapy letters does not establish a substantial or serious interference with privacy.[2] I therefore recommend that the court dismiss count IV of Tashjian's amended complaint.

5.      Chapter 93A

Mass. Gen. Laws ch. 93A, § 2 prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Mass. Gen. Laws ch. 93A, § 2(a).  "A person injured by another person's use or employment of any method, act or practice declared to be unlawful by section 2 . . . may bring an action . . . for damages and such equitable relief, including an injunction, as the court deems to be necessary and proper."  "[A] cause of action under c. 93A is 'not dependent on tort or contract laws for its definition.'"  <u>Kattar v. Demoulas</u>, 433 Mass. 1, 13 (2000).  However, "a chapter 93A claimant must show that the defendant's actions fell within at least the penumbra of some common-law, statutory, or other established concept of unfairness, or were immoral, unethical, oppressive or unscrupulous."  <u>Damon v. Sun Co.</u>, 87 F.3d 1467, 1483-84 (1996) (quoting <u>Quaker State Oil Ref. Corp. v. Garrity Oil Co.</u>, 884 F.2d 1510, 1513 (1st Cir. 1989)).

Defendants argue that Tashjian has failed to allege any unfair or deceptive acts, stating that the amended complaint suggests, at most, that the Gap in Therapy letters were erroneously sent to Tashjian's physician.  (Docket #25 at 10).  The undersigned disagrees.  Tashjian asserts that Defendants sent the Gap in Therapy letters knowing that Tashjian had not spoken to a pharmacist about contacting his physician and knowing that Tashjian had not requested that Defendants

---

[2] In <u>Kelley</u>, Justice Gants recognized that Judge Thayer Fremont-Smith had denied summary judgment on the plaintiff's invasion of privacy claim in 1999, finding that it presented "a novel question suitable for initial resolution by a jury." <u>Kelley</u>, 2007 Mass. Super. LEXIS 381, at *9-10 (quoting <u>Weld</u>, 1999 Mass. Super. LEXIS 261, at *16). Justice Gants gave a carefully considered explanation for why he had found to the contrary. <u>Id.</u> at *11-12. Tashjian cites to Justice Fremont-Smith's opinion as support for his position. (<u>See</u> Docket #22 at 18). However, the undersigned is persuaded by Justice Gant's analysis.

contact his physician.  (FAC ¶¶ 3-4, 63).  Such conduct, if proven, would clearly constitute an unfair or deceptive act.

Having found that Defendants engaged in an unfair and deceptive act in violation of Mass. Gen. Laws ch. 93A, § 2, the undersigned must now determine whether the unfair and deceptive act caused Tashjian to suffer any cognizable damages under Mass. Gen. Laws ch. 93A, § 9.

"[T]here is no such thing as a 'per se injury' under Chapter 93A; each plaintiff must prove that the unfair or deceptive act or practice caused it to suffer some loss."  Kelley, 2007 Mass. Super. LEXIS 381, at *36 (quoting Hershenow v. Enter. Rent-A-Car Co. of Boston, Inc., 445 Mass. 790, 797-98 (2006)); see Tyler v. Michaels Stores, Inc., 464 Mass. 492, 503 (2013) ("A plaintiff bringing an action for damages under c. 93A, § 9, must allege and ultimately prove that she has, as a result, suffered a distinct injury or harm that arises from the claimed unfair or deceptive act itself").  In Kelley, discussed supra section II.B.4, the court found that the defendant pharmacy had engaged in an unfair practice when it failed to disclose to patients that letters it sent to those patients about health and safety issues had been paid for by a pharmaceutical company and that the defendant pharmacy was earning a profit on each letter mailed.  Kelley, 2007 Mass. Super. LEXIS 381, at *37.   The court held that there was not sufficient evidence to permit a finding that the plaintiff had suffered any loss of money or property or significant emotional distress caused by his receipt of the unsolicited letter.  Kelley, 2007 Mass. Super. LEXIS 381, at *37.  However, the court did determine that there was undisputed evidence that the letter had caused the plaintiff to "suffer actual injury yielding nominal damages" because the defendant had made a net profit of roughly $1 from its mailing of the letter.  Id.  The court found that, as a matter of law, the plaintiff was entitled to the disgorgement of profit derived from the defendant's unfair and deceptive act.  Id. at *45 ("Phrased differently, this Court finds as a matter of law, that

[plaintiff] was 'injured' within the meaning of Mass. Gen. Laws ch. 93A, § 9(1), from having been denied [defendant's] ill-gotten profit from this unfair and deceptive act.").

In his amended complaint, Tashjian alleges that Defendants made a net profit each time they sent a Gap in Therapy letter and that Defendants failed to reveal that fact.[3]  (FAC ¶ 139).  As in Kelley, this allegation, which the court is required on a motion to dismiss to accept as true, is sufficient to establish that Tashjian was injured by being denied the Defendants' ill-gotten profit.  See id.  Thus, Tashjian would be entitled to recover as damages any net profit Defendants obtained as a result of its unfair and deceptive act.  See id.  Therefore, I recommend that the court deny the motion to dismiss with respect to count V of the amended complaint.

6.      Declaratory Judgment

The Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, provides "a means by which rights and obligations may be adjudicated in cases involving an actual controversy that has not reached the stage at which either party may seek a coercive remedy and in cases in which a party who could sue for coercive relief has not yet done so."  10B Charles Allen Wright, et al., *Federal Practice and Procedure* § 2751 (4th ed.); see Ernst & Young v. Depositors Econ. Protection Corp., 45 F.3d 530, 534 (1st Cir. 1995) ("The Declaratory Judgment Act serves a valuable purpose.  It is designed to enable litigants to clarify legal rights and obligations before acting upon them.").

Tashjian seeks a declaration that Defendants owed him and the class a fiduciary duty, that Defendants breached its duties to him and the class, that Defendants' actions as set forth in the amended complaint are unfair and deceptive and in violation of Chapter 93A, and that Defendants'

---

[3] In a separate and distinct allegation, Tashjian also asserts that Defendants realized a profit when, as a result of sending the Gap in Therapy letters, an additional prescription is filled with the Defendants.  (FAC ¶ 140).  However, in light of his physician's independent duties to Tashjian, see supra section II.B.1, such an allegation is insufficient to establish damages.  Tashjian cannot establish that Defendants' unfair and deceptive act, namely the false information in the Gap in Therapy letter, could have caused his physician to prescribe him a medication that was not called for.

acts and omissions were committed willfully, knowingly, and/or in bad faith.  (FAC ¶¶ 174-79). The court will necessarily decide these matters, and in fact is addressing many of them already in ruling on the instant motion to dismiss.  To the extent that it has not or need not address them in ruling on the other counts, the court would merely be offering an advisory opinion which it is precluded from doing.  See Narragansett, 19 F.3d at 693 ("The controversy must be such that it admits of specific relief through a decree of conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.") (quoting Aetna Life Ins. Co. v. Haworth, 300 U.S. 227, 240-21 (1937)).  The First Circuit has counseled that, in determining whether a declaratory judgment is appropriate, "courts will do well to ask . . . whether granting relief would serve a useful purpose, or, put another way, whether the sought-after declaration would be of practical assistance in setting the underlying controversy to rest."  Rhode Island v. Narragansett Indian Tribe, 19 F.3d 685, 693 (1st Cir. 1994); see also Zimmerman v. HBO Affiliate Grp., 834 F.2d 1163, 1170 (3d Cir. 1987) ("The declaration is an instrument of practical relief and will not be issued where it does not serve a useful purpose.") (citing E. Borchard, Declaratory Judgments 307 (2d ed. 1941).   Here, the issuance of a declaratory judgment would not serve a useful purpose; the rights and obligations of the parties as to which there exists an actual controversy will necessarily be determined in the litigation of the other counts of the amended complaint.  Therefore, I recommend that the court dismiss count VI of the amended complaint.

IV.    CONCLUSION

For the foregoing reasons, I hereby RECOMMEND that the motion to dismiss (Docket

#16) be ALLOWED as to Defendants CVS Health and CVS Caremark, Inc. and as to counts I, II,

III, IV, and VI and DENIED as to count V.[4]


/S/ David H. Hennessy
David H. Hennessy
UNITED STATES MAGISTRATE JUDGE

---

[4] The parties are hereby advised that, under the provisions of Fed. R. Civ. P. 72, any party who objects to these proposed findings and recommendations must file specific written objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation.  The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objections are made and the basis for such objections.  The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation.  See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 (1st Cir. 1988); United States v. Emiliano Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 604-05 (1st Cir. 1980); see also Thomas v. Arn, 474 U.S. 140 (1985).